Wright, J.,
delivered the opinion of the Court.
This is a contest between Georgetta C. Wilkinson,, wife of William H. Wilkinson, and Ms creditors, as to certain property in which she claims to have a separate estate, and denies its liability for his debts.
These creditors have obtained judgments against him, and have caused levies to be made upon this property, and seek to sell it as his estate. She has obtained an injunction to restrain them from its sale; and they, on the other hand, have filed bills to subject it to sale for the payment of the debts so due them.
*307 The property in controversy is a parcel of land in South Nashville, on Cherry street, fronting on that street 88J feet, and running back 165.
Forty feet of it was bought from Robert Henderson and conveyed by Isaac Paul, from whom Henderson had bought, on the 26th of November, 1849, to John M. Wilkinson, the consideration being $700.
Ten feet was bought from Elisha Hall about the year 1852, for $200, and thirty-seven feet from the same in the spring — say April, 1854 — for $800. And one and a half foot was bought from Charles F. Wright, and. cost $30.
The Chancellor decreed in favor of Mrs. Wilkinson,, and held that the creditors could have no valid claim, upon this property, it being her sole and separate-estate.
In this decree we concur. It is shown in this, record, beyond all dispute, that she became the owner-of a valuable estate in slaves and money, under a deed of gift from John Bosley, her grandfather, and under-his will; and that this estate was, by a decree of the Chancery Court at Nashville, in the year 1847, settled upon her, to. her sole and separate use for life, with remainder to her children.
In this decree the said John M-. Wilkinson, who was the father of the said William H., was appointed the trustee of the said estate, to hold and manage the same for the benefit of Mrs. Wilkinson and her children.
As to the forty feet bought of Henderson, we have-no doubt whatever that it was purchased by John M. Wilkinson, the trustee, for Mrs. Wilkinson, and paid fór-out of the trust fund.
*308 He is shown to have had no means of his own, and could not have paid for it otherwise than out of the trust estate.
But we are not left to rely upon his want af means. That he had in his hands money of the trust estate sufficient to pay for it is clearly proved, and that he so applied it he frequently declared to many witnesess, and that the purchase was made for her. He even went so far as to mention the source from which the money had come, namely, from Mr. Bosley. And in his last illness called persons to bear witness that the lot was hers; that he had purchased it with her money; and though the deed was taken to him, yet it should have been to her, and he always so intended, but that his son had drawn the deed contrary to his wishes; that if he lived the title should be put in the proper parties, and if he died, they were to be witnesses of her rights.
He died in 1854; and all this look place before the contest with the creditors, and, as we believe, before their debts existed.
As to this forty feet, it is not pretended that William H. Wilkinson paid for it; but only that he acquired it by inheritance from his father. But the declarations of his father, unexplained, are conclusive against him and against his creditors, who, in this case, stand on no better ground than he does.
As to the residue of the 88J feet, the weight of the proof is that it was paid for out of her separate estate, William H. Wilkinson so declared before this contest with his creditors; and this is evidence against him and them. Besides, we think, he also had no means where- *309 witb to make tbe purchase. But as to most of the purchase money we have higher evidence.
It is shown, by the most unquestionable testimony, that Mrs. Bosley, 'the grandmother of Mrs. Wilkinson, in the fall of the year 1853, in a division of a large sum of money among her children and grandchildren, gave to her, to her sole and separate use a note on Mark Cockrill for $1,000, which was sold, and $870 realized from it; and that with a part of the proceeds, three motes or claims on Lucas, Allen, and Long, amounting to $578.50, were purchased and paid to Elisha Hall, in discharge of so much of the purchase money of the thirty-seven feet. And, as before stated, Wm. H. Wilkinson declared that the entire payment of the property Rad been made with his wife’s money and means. The annual hires of her slaves are proved to have been near $500 — most of which, we are satisfied he received and used for many years.
It is true the bonds for title from Hall were taken . to him, but the deeds were to his wife, for her sole and separate use, he, at the time, declaring it to be her property. And we think she has shown, to our reasonable satisfaction, that the entire estate was purchased with her means.
If there was any doubt in tracing her funds into this property, it could only be as to a part of the purchase from Hall. And, as to this, if her husband had become her debtor by the use of the trust estate, as we are satisfied he had, and chose, with his own means, to purchase and have conveyed to her separate use property in payment of what he owed her, we apprehend no creditor of his could be heard to complain.
*310 As to the improvements erected upon this property, they were made upon the forty feet, a piece of ground, beyond doubt, in equity, the estate of the wife, and cost from $1,000 to $1,500.
It is not necessary for us to state the effect of improvements made by the husband, voluntarily and without consideration, upon the wife’s leal estate, and whether his creditors would, in such a case have a remedy. Ewing v. Cantrell, Meigs’ Rep., 364; 5 Hum., 417.
It is enough for us to say here, that we are of opinion from the facts in this record, that these improvements were also paid for with the means of the wife. And that if they were not, the husband being, as we are compelled to believe, largely her debtor because of his having used her trust property, might lawfully m'ake them with his own means in discharge of what he owed his wife, and no creditors of his could be heard to complain.
In such a case the wife’s equity is superior to that of the creditors.
We do not find about this transaction such marks of fraud or suspicion as make it inequitable for Mrs. Wilkinson to hold this property, or to induce us to let it stand merely as a security for her advances.
We understand the doctrine to be, that where the trustee, with the trust money, whether he be authorized to do so or not, purchases an estate, even in his own name, intending to hold it for himself, the parties entitled to the money may have the benefit of the purchase, and are not restricted to a mere equitable lien upon the estate for the money advanced. And that a *311 fortiori is tbis so where the purchase is made directly for the benefit of the cestui que trust, and so intended by both the parties. The right of the cestui que trust becomes one of ownership of the land, and not of lien upon it for the advances. Notes in Dyer v. Dyer, 1 Leading Cases in Equity, 178.
Decree affirmed.